UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LISA ADAMS-RUNION,

                Plaintiff,

    v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA; and DOES 1-100,
inclusive,

                Defendants.

No.  2:20-cv-01042-JAM-DB

**ORDER GRANTING JUDGMENT FOR
DEFENDANT; FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lisa Adams-Runion ("Plaintiff") brought this
action against Defendant Unum Life Insurance Company of America
("Unum Life" or "Defendant") pursuant to the Employment
Retirement Income Security Act ("ERISA") following Unum Life's
denial of Plaintiff's request for long term disability benefits.
Unum Life issued a group long term disability policy to Tenet
Healthcare Corporation and Plaintiff obtained coverage under this
policy through her employment with Doctor's Hospital of Manteca,
which is owned by Tenet Healthcare.  Plaintiff was a Director of
Laboratory Services at Doctor's Hospital of Manteca.  Plaintiff's

1

last day worked was March 14, 2019.  She applied for Short- and
Long-Term Disability through Unum Life.  Unum Life issued a
primary denial letter on September 4, 2019.  Plaintiff appealed
the denial of long-term disability benefits.  On November 14,
2019, Unum Life re-affirmed its denial of benefits.  On May 5,
2020, Plaintiff filed this lawsuit (ECF No. 1) pursuant to ERISA,
seeking damages for Unum Life's denial of long-term disability
benefits.

On July 1, 2021, Unum Life lodged the Administrative Record
("AR") and the applicable Insurance Policy in this case (ECF
No. 11).  Both parties subsequently filed cross-motions for
judgment under Federal Rule of Civil Procedure 52.1 (ECF Nos. 12,
16) and, at the Court's request, Proposed Findings of Fact and
Conclusions of Law (ECF Nos. 31, 32).

II.   FINDINGS OF FACT

A.   <u>The Parties</u>

1.   Plaintiff was a Director of Laboratory Services at
Doctor's Hospital of Manteca in Manteca, California.

2.   Plaintiff's major duties and responsibilities were to
direct, coordinate and supervise all activities in the
laboratory.

3.   According to Plaintiff, her job required sitting for
six or more hours per day and she was not required to lift more
than 20 pounds.

4.   According to Plaintiff, her job was very high stress.

5.   Plaintiff worked 32 hours per week.

B.   <u>The Policy</u>

6.   Unum Life issued the group Long Term Disability Policy,

no. 546864001 at issue in this case, to Tenet Healthcare

Corporation effective January 1, 1998 ("the Policy").

7.    Plaintiff obtained coverage under the Policy through

her employer which is owned by Tenet Healthcare Corporation.

8.    The Policy requires the claimant to provide Proof of

Claim, including restrictions or limitations ("R/Ls") preventing

the claimant from performing, in relevant part, his or her

Regular Occupation ("RO").

9.    Policy benefits become payable following the

Elimination Period ("EP"), which is defined as "a period of

continuous disability which must be satisfied before you are

eligible to receive benefits from Unum."

10.   The Policy's EP for Group 2 employees, including

Plaintiff, is 90 days.

11.   Also, for Group 2 employees including Plaintiff, the

Policy defines "disability" for the first 24 months of payments

as:

> You are disabled when Unum determines that:
>
> - You are **limited** from performing the **material and
>   substantial duties** of your regular occupation due to
>   your **sickness** or **injury**; and
>
> - You have a 20% or  more loss in your **indexed monthly
>   earnings** due to the same sickness or injury.
>   (Emphasis in original.)

12.   "Limited" means what you cannot or are unable to do.

13.   "Material and Substantial Duties" means that:

> - Are normally required for the performance of your
>   regular occupation; and
>
> - Cannot be reasonably omitted or modified, except
>   that if you are required to work on average in
>   excess of 40 hours per week, Unum will consider your
>   ability to perform that requirement if you are

3

working or have the capacity to work 40 hours per week.

14.  "Regular Occupation" means:

- The occupation you are routinely performing when your disability begins.  Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

15.  After 24 months of payments under the RO definition, the definition of disability requires the claimant to be "unable to perform the duties of any gainful occupation for which [they] are reasonably fitted by education training or experience."

16.  The Policy also has a 24-month limited pay period for disabilities due to mental illness which is defined to include anxiety.

17.  Coverage under the Policy ends on the last day the participant is in active employment.

18.  The Policy defines "Active Employment" as:

- You are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation.  You must be scheduled to work at least the minimum number of hours as described by each facility.

C.  Plaintiff's Medical History Before March 14, 2019

19.  Plaintiff has a history of coronary artery disease and had a mitral valve repair surgery on September 26, 2015.

20.  After Plaintiff recovered from the 2015 surgery, she returned to full-time full duty work on February 1, 2016.

21.  On May 8, 2018, Plaintiff saw her cardiologist, Dr. Zoe Yu, for dizziness, presyncope, and throat/back pressure

experienced during a meeting.  The workup was negative and echocardiogram showed normal heart function with an ejection fraction rate of 72%.

22.  On November 27, 2018, Plaintiff had her next visit with Dr. Yu.  She complained of fatigue and shortness of breath after going up a hill or climbing a flight of stairs, as well as chest pain about twice per week lasting 30 minutes.  Dr. Yu examined Plaintiff and noted she appeared well and in no distress.  She did detect a heart murmur and ordered additional tests, including a transthoracic echocardiogram.  She also prescribed nitroglycerin as needed for chest pain.  Dr. Yu's primary diagnosis was dyspnea on exertion/fatigue, and her secondary diagnosis was coronary artery disease.  Dr. Yu advised Plaintiff to follow-up in one month.

23.  On December 24, 2018, Plaintiff had a left heart catheterization angiography to evaluate her chest pain.  The test results noted Plaintiff's native multi-vessel coronary artery disease, but also noted 4/4 patent bypass grafts, normal left ventricular systolic function, moderate 2+ mitral valve regurgitation, and "upper limits of normal left valve end diastolic pressure."

24.  A patent graft is one that is open and unobstructed.

25.  On January 9, 2019, Plaintiff followed up with Dr. Yu, who noted that the December 2018 recent coronary angiogram showed her four grafts were patent.  Dr. Yu also noted that Plaintiff continued to report chest pain with back pain during emotional stress, and fatigue after walking up a hill.  Her physical exam was unremarkable.  Dr. Yu did not provide R/Ls, or recommend that

1   Plaintiff stop work or increase treatment.  She did advise
2   Plaintiff to return in six months.
3       26.  Dr. Yu noted "She plans to retire in March."
4       27.  On January 30, 2019, Plaintiff saw her family
5   physician, Dr. Dolores Policicchio, for joint pain.  No physical
6   examination was documented and no other medical conditions or
7   symptoms were listed.  Plaintiff was prescribed Tramadol.
8       D.   <u>Plaintiff's Retirement in March 2019 and Treatment</u>
9            <u>During That Period</u>
10      28.  Plaintiff's last day worked was March 14, 2019.  She
11  reported she worked a full 8 hours that day.
12      29.  On March 14, 2019, Plaintiff posted on Facebook:
13  "Started New Job at Retired" and "Officially Retired Today".
14      30.  Plaintiff's Facebook page as of March 14, 2019,
15  indicated she lived in Gold Beach, Oregon, having moved from
16  Sacramento.
17      31.  Plaintiff remained on company payroll until March 18,
18  2019, to get her bonus.
19      32.  Plaintiff was not on a covered leave of absence when
20  she stopped work after March 14, 2019.
21      33.  On March 14, 2019, at 10:10 am, Dr. Policicchio's
22  Office issued a Kaiser "Work Status Report" placing Plaintiff off
23  work from March 15 to May 14, 2019.
24      34.  The Work Status Report and Attending Physician
25  Statement did not identify a reason why Plaintiff was off work,
26  her job duties or any symptoms preventing her from working.
27  Dr. Policicchio's treatment notes did indicate that it was not
28  permanent.

35.  On March 14, 2019, at 10:36 am, Plaintiff saw Dr. Policicchio's medical assistant for fatigue and angina.  At 11:05 am, Plaintiff saw Dr. Policicchio.  Under "Subjective", Dr. Policicchio noted "High stressful job".  Dr. Policicchio's physical exam noted Plaintiff was alert, well appearing, and in no distress.  Dr. Policicchio diagnosed fatigue and ordered blood tests to evaluate Plaintiff's lipid panel, iron levels, ferritin levels and blood count.

36.  Dr. Policicchio did not refer Plaintiff to a specialist to address any of her symptoms, including stress or fatigue, and there were no future appointments scheduled.

37.  On March 18, 2019, Dr. Policicchio advised Plaintiff that her iron and ferritin levels tested on March 14, 2019 looked good.

E.    Plaintiff's Post-Retirement Treatment and Claims for Disability Benefits

38.  On May 1, 2019, Plaintiff discussed her STD claim with Unum Life and confirmed she was already living in Oregon and that she would not be returning to work.

39.  On May 16, 2019, Plaintiff emailed Dr. Policicchio to extend her "off work" status:

> *"Can you extend my time off?  I have applied for social security disability based on my fatigue, heart conditions, and chest pain.  I cannot handle the stresses of my profession with my heart being compromised; however long you can extend would be appreciated; I am determined that I am not going to be one of those people that dies at my desk."*

40.  On May 17, 2019, without speaking to or examining Plaintiff, Dr. Policicchio issued another Off Work Status Note online, suggesting she had seen Plaintiff on May 16, 2017, and

was placing Plaintiff off work from May 15, 2019 through July 31, 2019.

41.  On June 6, 2019, Unum Life initiated assessment of Plaintiff's LTD claim, including phone calls with Plaintiff on June 6, 2019 and June 11, 2019, to learn more about her claim that she was no longer able to perform her occupation.

42.  Plaintiff reported that her condition had deteriorated to the point that she was being rushed out of meetings to the emergency room.

43.  Plaintiff also stated that she passed out daily due to a lack of oxygen.

44.  Plaintiff's medical records do not contain documentation that Plaintiff passed out daily or had significant pre-syncope episodes.  The records do note a single occurrence of pre-syncope at work on May 2018, in which Plaintiff was taken to the hospital and fully worked up, however the test results were unremarkable.

45.  After the May 2018 treatment, Plaintiff did not return to Dr. Yu again until November 2018, and there was no record that she had passed out in the interim; she reported that her main symptoms since June 2018 were fatigue and dyspnea on exertion.

46.  When Plaintiff next returned to Dr. Yu on January 9, 2019, she did not note any passing-out incidents (daily or otherwise) and she advised Dr. Yu that she planned to retire in March.

47.  On her June 6, 2019 call with Unum Life, Plaintiff confirmed that no attending physician provided any R/Ls before her last day worked, but she did say that Dr. Policicchio had

1  advised her to stop working.

2      48.   On her June 11, 2019 call with Unum Life, Plaintiff

3  stated she had been in her Oregon home for three months, was able

4  to drive, boat, go out for meals, do small house chores, perform

5  her activities of daily living ("ADLs") independently, use the

6  computer (including Facebook), read, watch TV and manage her

7  finances.   She confirmed her job did not require her to travel

8  outside the hospital, but she felt she was unable to do her job

9  because it required her to be on call 24/7 and was very high

10 stress.   Plaintiff stated that she got fatigued with little

11 effort or exertion and her heart could not handle any stress.

12 She also confirmed that she no longer treated with cardiologist,

13 Dr. Yu.

14      49.   On June 19, 2019, Plaintiff called Dr. Policicchio to

15 discuss her disability claim.   The appointment lasted between 11

16 and 20 minutes.

17      50.   Also on June 19, 2019, Dr. Policicchio completed an

18 Attending Physician's Statement ("APS"), which indicated that

19 Plaintiff's last office visit was June 17, 2019.   Dr. Policicchio

20 listed the primary diagnoses that may impact Plaintiff's

21 functional capacity as: History of MI; CABG 5 arteries; Mitral

22 Valve Repair; Vitamin B 12 Deficiency; Coronary Artery Disease;

23 Anemia, Iron Deficiency; Atherosclerosis of Aorta;

24 Hyperlipidemia, and Fatigue.

25      51.   There is no record in Dr. Policicchio's records of an

26 office visit on or around June 17, 2019, just a single blank

27 page.

28      52.   Plaintiff was living hundreds of miles away (a nine

9

1   hour drive) from Dr. Policicchio's office by June 17, 2019.

2       53.  On June 19, 2019, Plaintiff established care with

3   Oregon family physician Dr. Reginald Williams.  Dr. Williams

4   noted Plaintiff's self-reported medical history and took her word

5   that she was on disability.  He noted he "advised her to continue

6   with disability … from a cardiac standpoint, stress being one of

7   the modalities to work that I think would be very destructive for

8   this lady."  Dr. Williams' physical examination was normal and no

9   fatigue, chest pain or dyspnea were noted; hypertension ("HTN")

10  was under control, and no heart murmur was detected.

11      54.  On June 27, 2019, Plaintiff forwarded Unum Life another

12  APS from Dr. Policicchio dated June 26, 2019, which suggested she

13  treated Plaintiff on May 15, 2019.  Dr. Policicchio listed

14  Plaintiff's only diagnosis as "fatigue," and estimated that she

15  could return to work by August 1, 2019.  She did not explain how

16  or why the fatigue prevented Plaintiff from performing her

17  occupational duties.  She did not refer her to any specialists.

18      F.   Unum Life's Review and Denial of Plaintiff's Claim and

19           Plaintiff's Appeal

20      55.  On July 11, 2019, Unum Life Senior Vocational

21  Rehabilitation Consultant ("Sr. VRC") Deborah Maxcy reviewed

22  Plaintiff's occupational duties and confirmed that in the

23  national economy it most closely resembled that of a Head of

24  Medical Laboratory and required frequent sitting, reaching,

25  handling, and fingering, and occasional standing, walking, and

26  stooping.  It also required occasional exertion up to 20 pounds

27  (consistent with Plaintiff's report).

28      56.  On July 12, 2019, Unum Life Registered Nurse Sherry Roy

reviewed Plaintiff's medical records.  Nurse Roy noted the following observations: (a) Plaintiff's complaints about chest and back pain during emotional stress, and feeling fatigued with hardly any exertion; (b) When Plaintiff initially saw Dr. Yu in November 2018, she reported fatigue after climbing hills or stairs, and when she saw Dr. Yu in January 2019, he recommended a follow up visit within six months, which did not suggest an acute condition; (c) Plaintiff's last exam with Dr. Policicchio on March 14, 2019 was normal, as was her exam with Dr. Williams, and Plaintiff had not returned for further cardiology workup since stopping work; (d) Dr. Williams noted that Plaintiff's HTN was under control, no heart murmurs were detected, and Plaintiff was not taking any nitroglycerin for her angina; and (e) The medical information, including the level and intensity of treatment, did not support that Plaintiff was unable to perform her occupation, and that her level of reported impairment was inconsistent with the medical evidence.

57.  On July 16, 2019, Unum Life On-Site Physician ("OSP") Dr. Wesley Johnson, Board Certified in Family Medicine, attempted to speak with Dr. Policicchio regarding Plaintiff's conditions, but was unsuccessful.

58.  Dr. Johnson sent a letter to Dr. Policicchio setting forth his analysis of Plaintiff's relevant medical history and functional capacity.  Dr. Johnson summarized the duties of Plaintiff's regular occupation, as identified by Sr. VRC Maxcy, and asked Dr. Policicchio (1) if she would like to defer further opinion to Plaintiff's new treating doctor and/or (2) if she believed Plaintiff could meet the demands of her occupation.

11

59.  Dr. Johnson also sent a similar letter to Dr. Williams on July 22, 2019.

60.  On August 5, 2019, having received no response from either Dr. Policicchio or Dr. Williams, Dr. Johnson documented his review of Plaintiff's medical information and his finding that Plaintiff was able to perform her occupational duties.  He concluded in pertinent part:

> (. . .) Multiple normal physical examinations are documented over the last six months and there has been no additional evaluation for the claimant's reported fatigue. (. . .)
>
> The available medical information does not support that the claimant is precluded from the occupational demands listed above.  Recent evaluation and examinations have been normal.  There has been no change in the medical management of her cardiac conditions or chest pain.  The claimant reports chest pain due to the stress of her work environment multiple times in the medical record.  Laboratory evaluation for reported fatigue was normal and the claimant's self-reported activities and recent move are not consistent with fatigue being a limiting condition.  There is no discussion or evaluation in the medical records around cognitive concerns. There is no further evaluation or treatment around work-related stress and its relationship with the claimant's reported chest pain, suggesting no impairing behavioral health conditions.

61.  Also on August 5, 2019, Unum Life referred Plaintiff's file for an additional medical opinion.

62.  On August 6, 2019, Dr. Williams responded to Dr. Johnson's letter, expressly agreeing that Plaintiff was "able to meet the demands" of her regular occupation.

63.  On August 7, 2019, Unum Life Designated Medical Officer ("DMO") Zaw Maung, M.D., Board Certified in Occupational Medicine, reviewed Plaintiff's records and concluded that Plaintiff was capable of performing her occupational demands.

64.  Dr. Maung noted Plaintiff's coronary artery bypass surgery in 2015 and her hospitalization for cardiac complaints in May 2018, but noted (i) her follow-up cardiac evaluations were normal, (ii) she had returned to work after both the 2015 surgery and the 2018 hospitalization; (iii) her bypass grafts were patent as of December 2018, and (iv) there was no documented acceleration of her medical management in response to her reports of ongoing chest pain.

65.  Dr. Maung noted that Plaintiff's "lab work-up have been unremarkable including normal iron studies and blood count, suggesting reported iron deficiency anemia is not contributory to complaints of fatigue." and that Plaintiff's self-reported activities, including her recent move, suggested that fatigue was not a limiting condition.

66.  Dr. Maung concluded that "based on the available medical data, there is nothing to suggest that the claimant is incapable of performing the occupational demands on a full-time basis."

67.  On August 12, 2019, Plaintiff reported that Dr. Policicchio's office had contacted her and they were unsure what information was needed.  Unum Life reiterated that it needed a response from Dr. Policicchio to Dr. Johnson's letter.  Plaintiff also asked about Dr. Williams' response, and Unum Life advised Plaintiff that he had stated she could perform the demands of her occupation.

68.  On August 26, 2019, Unum Life received records from Dr. Policicchio from March 1, 2019 to August 1, 2019, which confirmed that Dr. Policicchio had not examined Plaintiff since March 14,

2019, but her office continued to issue "off work" slips and refill prescriptions.

69.  On September 4, 2019, Unum Life Disability Specialist Alicen Cowan informed Plaintiff that Unum Life had determined she failed to prove that she was unable to perform the duties of her regular occupation as of March 15, 2019 and continuously through the Policy's EP.

70.  On October 3, 2019, Plaintiff submitted a written appeal.

71.  Plaintiff's appeal included a July 30, 2019 treatment record with Oregon cardiologist Giri Satyendra.  The treatment record indicates that Plaintiff told Dr. Satyendra that she retired on disability due to chest pain.

72.  Dr. Satyendra's physical examination was unremarkable and documented a regular heart rate/rhythm.  Assessment indicated, "Has had recurrence of chest pain which has led to the patient retiring on disability in Gold Beach, Oregon.  She had been statin intolerant in the past and currently having difficulty continuing her atorvastatin because of muscle aches, tenderness, and elevated liver enzymes (ALT of 120 AST of 251). I recommend that she should be off the statins because of being statin intolerant and she should be started on Repatha (…).  I will see her with some standard blood tests results and results of the aforementioned tests within a few months in the outpatient clinic."

73.  Dr. Satyendra discussed a heart healthy lifestyle for weight loss and recommended moderate physical activity, 30-40 minutes a day, 4-6 times per week for weight loss.

14

74.  Dr. Satyendra did not offer any opinion regarding Plaintiff's ability to work.

75.  The July 30, 2019 treatment with Dr. Satyendra was Plaintiff's first cardiology appointment after her March 14, 2019 retirement.  Thus, Plaintiff had no cardiology treatment during the entire EP.

76.  On October 16, 2019, Plaintiff forwarded a response from Dr. Policicchio to Dr. Johnson's July 16 letter stating she disagreed that Plaintiff could meet her occupational demands.

77.  Dr. Policicchio's response provided no details or clinical evidence supporting her conclusion.  In response to Unum Life's request for the "clinical rational" for her opinion, Dr. Policicchio stated only, "*After reviewing the patient job duties, I agree the patient cannot do her job duties due to the high demand.*"

78.  On October 24, 2019, Unum Life obtained an opinion from Dr. Beth Schnars, MD, Board Certified in Internal Medicine, who reviewed Plaintiff's records and found they did not support that she was precluded from performing her occupational duties as of March 15, 2019 and continuously through the EP.

79.  Dr. Schnars noted there was no evidence of residual or progressive pathology consistent with work impairment, that Plaintiff's recent diagnostic testing showed her heart and her medication management were stable, and pointed out the absence of any aggressive medication management, and the large gaps in cardiology evaluations.

80.  Dr. Schnars noted that the recent treatment with Dr. Satyendra showed a normal cardiopulmonary exam and that a recent

15

Oregon hospitalization for gastrointestinal issues was not significant and that despite Plaintiff's comments about escalation of work stress, there was no behavioral health evaluation for stress symptoms or therapy or medications prescribed for stress.

81.  On October 28, 2019, prior to rendering its appeal decision, Unum Life provided Plaintiff an opportunity to review and respond to the information reviewed, considered and generated during the appeal.

82.  Plaintiff did not respond or request an extension to respond.

83.  On November 14, 2019, Unum Life Lead Appeals Specialist Karen Connolly determined that Unum Life's initial decision was correct, i.e., Plaintiff failed to prove that she was unable to perform her occupational duties when she stopped working.

84.  Unum Life noted that Plaintiff's cardiac diagnostics in December 2018 did not reveal any issues and there was no change in treatment in January 2019 when Plaintiff saw her cardiologist.

85.  Unum Life also noted that during Dr. Williams' visit in June 2019, Plaintiff did not report fatigue, chest pain, palpitations, or shortness of breath.

86.  Unum Life also found that Dr. Policicchio's opinions were not supported by the medical evidence.

87.  Unum Life informed Plaintiff of her available options, including filing an ERISA action.

88.  At the time of Unum Life's final decision on November 14, 2019, Plaintiff's SSDI claim had been denied.

///

III.   CONCLUSIONS OF LAW

A.   <u>Jurisdiction</u>

1.   This Court has federal question jurisdiction over claims brought pursuant to ERISA.  <u>See</u> <u>Clorox Co. v. U.S. Dist.</u> <u>Court for N. Dist. of Cal.</u>, 779 F.2d 517, 521 (9th Cir. 1985) ("ERISA creates a federal cause of action, with concurrent state and federal jurisdiction, over claims by an employee 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'") (quoting 29 U.S.C. § 1132(a)(1)).

B.   <u>Legal Standard</u>

2.   The parties agree that review is de novo.  Pl.'s Mot. at 16, ECF No. 12; Def.'s Cross-Mot at 13, ECF No. 16.  "When conducting a de novo review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan."  <u>Muniz v. Amec Const. Mgmt., Inc.</u>, 623 F.3d 1290, 1295-96 (9th Cir. 2010); <u>see also</u> <u>Kearney v. Standard Ins. Co.</u>, 175 F.3d 1084, 1095 (9th Cir. 1999) (holding that under a de novo review, a district court evaluates "whether [the Plaintiff] is disabled within the terms of the policy"), cert. denied, 528 U.S. 964 (1999).

3.   Under a de novo review, Plaintiff has the burden to show, by a preponderance of the evidence, that she was disabled under the terms of the Policy during the claim period.  <u>Oster v.</u> <u>Standard Ins. Co.</u>, 759 F. Supp. 2d 1172, 1185 (N.D. Cal. Jan. 5,

2011).

4.   The administrative record furnishes "the primary basis of review." <u>Kearney</u>, 175 F.3d at 1090.  The AR consists of "the papers the insurer had when it denied the claim." <u>Id.</u> at 1086.

5.   Plaintiff requests that the Court consider additional evidence not within the AR; however, because the Court granted Defendant's motion to strike Plaintiff's extrinsic evidence in its Order at ECF No. 33, the Court denies Plaintiff's request as moot.

C.   <u>Terms of the Policy</u>

6.   Under the terms of the Policy, a claimant is disabled when she is "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury," and when she has "a 20% or more loss in [her] indexed monthly earnings due to the same sickness or injury."  Policy ("POL") at 18, ECF No. 11-3.

7.   Under the terms of the Policy, a claimant's "regular occupation" is her occupation "as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."  POL at 36.

8.   Defendant determined that, in the national economy, Plaintiff's regular occupation as a Director of Laboratory Services required "frequent sitting, reaching, handling, and fingering, and occasional standing, walking, and stooping" with "occasional exertion up to 20 pounds, consistent with Plaintiff's [own] earlier report."  Def.'s Cross-Mot. at 7.

9.   Plaintiff argues that "the bare physical requirements listed by [D]efendant fail to cover the scope of [P]laintiff's

duties."  Pl.'s Opp'n at 6, ECF No. 20.  Although Plaintiff established on the record that her job as a Director of Laboratory Services was highly stressful and that she was expected to be on-call 24/7, Plaintiff did not establish that these characteristics are true of her occupation in the national economy.  As such, these characteristics do not form part of Plaintiff's "regular occupation" for the purpose of this Court's de novo review.

10.  Under the policy, a claimant is entitled to benefit payments after an Elimination Period, which is "a period of continuous disability which must be satisfied before you are eligible to receive benefits."  POL at 34.  Plaintiff's elimination period as a Group 2 policyholder is 90 days, which ran from March 16, 2019 to June 13, 2019.  Administrative Record ("AR") at UA-CL-LTD-RUNION-000747, ECF No. 11-2.

D.   Analysis

11.  Plaintiff's medical history does not support by a preponderance of the evidence that Plaintiff was unable to work in her regular occupation.

12.  The medical records do not show that Plaintiff's diagnoses impaired her to a degree that she was no longer able to perform her duties as of March 15, 2019.  Rather, she worked full time concurrent with her treatment through her last day worked on March 14, 2019.

13.  Four medical professionals reviewed her medical history and concluded that Plaintiff was not disabled under the Policy: Unum Life's Registered Nurse Sherry Roy, Unum Life's On-Site Physician Dr. Wesley Johnson, Unum Life's Designated Medical

1  Officer Dr. Zaw Maung, and Plaintiff's own doctor, Dr. Reginald

2  Williams.

3      14.  Plaintiff's cardiology exams prior to her work stoppage

4  were normal, Plaintiff had been able to successfully return to

5  work after both her 2015 heart surgery and her May 8, 2018

6  hospital visit, her bypass grafts were patent as of December

7  2018, and there was no documented acceleration of her treatment

8  on her last day of work (March 14, 2019).  Id. at UA-CL-LTD-

9  RUNION-000333-339.  In January 2019, three months before

10 Plaintiff retired, Cardiologist Dr. Yu noted that she did not

11 need to see Plaintiff for six months.  Id. at AR at UA-CL-LTD-

12 RUNION-000356-357.

13     15.  No physician advised Plaintiff to stop working, or to

14 limit or restrict her work activities, before her last day of

15 work on March 14, 2019 when she worked a full 8 hour day.  Id. at

16 UA-CL-LTD-RUNION-000156-157, 560.

17     16.  The only doctor on the record who supports Plaintiff's

18 claim is her primary care physician, Dr. Dolores Policicchio.

19 Plaintiff argues that her "primary treating physician is best

20 suited to determine whether [her] patient's subjective experience

21 is disabling," because her PCP has observed her "over a prolonged

22 period of time."  Pl.'s Mot. at 21.  These observations, however,

23 are absent from Plaintiff's medical records, which she concedes:

24 "Many of these observations never reached the written medical

25 record, since they are used by the doctor for diagnosis and

26 treatment, as contrasted to the preparation of an explanatory

27 document."  Id.

28     17.  Plaintiff asks the Court to give significant weight to

1  Dr. Policicchio's opinion.  Id.

2      18.  As a matter of law, ERISA claim administrators are not

3  obligated to give special deference to the opinions of treating

4  physicians.  See Black & Decker Disability Plan v. Nord, 538 U.S.

5  822, 834 (2003) ("Courts have no warrant to require

6  administrators automatically to accord special weight to the

7  opinions of a claimant's physician").

8      19.  District courts, however, "may evaluate the weight of

9  each doctor's opinion" when handling ERISA appeals.  Shaw v. Life

10  Ins. Co. of N. Am., 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015).

11  When evaluating the credibility of a treating physician's

12  opinions the Court should look to (1) the extent of the patient's

13  treatment history, (2) the doctor's specialization or lack

14  thereof, and (3) how much detail the doctor provides supporting

15  his or her conclusions.  Id. at 1129.

16      20.  In the Ninth Circuit, courts have afforded more weight

17  to the opinions of physicians who have personally examined a

18  patient.  See Salomaa v. Honda Long Term Disability Plan, 642

19  F.3d 666, 676 (9th Cir. 2011).  With respect to Dr. Policicchio,

20  the Court finds that she was not in regular contact with

21  Plaintiff and the treatment history in the AR does not support

22  the credibility of her opinion.

23      21.  Dr. Policicchio last saw Plaintiff in person on March

24  14, 2019, where she reported Plaintiff was "alert, well

25  appearing, and in no distress."  AR at UA-CL-LTD-RUNION-000333-

26  334.  Dr. Policicchio diagnosed fatigue and issued a Work Status

27  Report placing Plaintiff off work from March 15 to May 14, 2019.

28  Id.  On May 17, 2019, following an email request from Plaintiff,

1   Dr. Policicchio issued another Work Status Report placing

2   Plaintiff off work from May 15 to July 31, 2019.  Id. at UA-CL-

3   LTD-RUNION-000319-320; 493.  Despite these Work Status Reports,

4   Dr. Policicchio's own records confirm that Dr. Policicchio did

5   not examine Plaintiff in person after March 14, 2019.  Id. at UA-

6   CL-LTD-RUNION-000702-16.  Because Dr. Policicchio did not see or

7   examine Plaintiff during the applicable Elimination Period from

8   March 16, 2019 to June 13, 2019, the Court finds a lack of

9   treatment history to support Dr. Policicchio's medical conclusion

10  about the Plaintiff during this timeframe.

11      22.  The Court next considers Dr. Policicchio's area of

12  specialty and whether it relates to the alleged disability.  The

13  Court finds that Dr. Policicchio's experience as a primary care

14  physician qualifies her to give an opinion about Plaintiff's

15  fatigue, which is the primary basis for Plaintiff's disability

16  claim.

17      23.  Finally, the Court considers the level of detail

18  Dr. Policicchio offered in support of her medical opinion.

19  "[T]he more detail a physician provides concerning the bases for

20  his or her diagnosis and opinion, the more weight his or her

21  conclusions are afforded."  Shaw, 144 F. Supp. 3d at 1130-1131.

22  In response to Defendant's July 2019 letter requesting

23  Dr. Policicchio's opinion on Plaintiff's ability to meet her

24  occupational demands, Dr. Policicchio wrote only: "After

25  reviewing the patient job duties, I agree the patient cannot do

26  her job duties due to the high demand."  AR at UA-CL-LTD-RUNION-

27  000847-850.  As such, the Court finds Dr. Policicchio did not

28  provide any information to support her medical conclusion.

1    24.  Considering these factors, the Court finds that

2    Dr. Policicchio's evaluation should be given little weight,

3    because she did not treat Plaintiff during the Elimination Period

4    and because she failed to offer any details supporting her

5    conclusion in her response to Defendant's inquires.

6    25.  Based on the medical record furnished in the AR, there

7    is not sufficient evidence to satisfy Plaintiff's burden of

8    showing by a preponderance of the evidence that she was unable to

9    perform the material duties of her regular occupation.

10        E.  Conflict of Interest

11    26.  Plaintiff argues that Defendant suffered from a

12    conflict of interest that caused it to breach its fiduciary duty

13    under ERISA.  Pl.'s Mot. at 17.  Plaintiff contends that

14    Defendant failed to adequately investigate her claim, failed to

15    provide a full and fair review, and failed to have a doctor

16    evaluate her in person.  Id. at 17-19.

17    27.  As a matter of law in the Ninth Circuit, on de novo

18    review, the Court evaluates "whether the plan administrator

19    correctly or incorrectly denied benefits, without reference to

20    whether the administrator operated under a conflict of interest."

21    Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th

22    Cir. 2006) (emphasis added).  As noted above, the parties do not

23    dispute that review is de novo.  Accordingly, the Court need not

24    reach Plaintiff's argument.

25        F.  Conclusion

26    28.  Plaintiff did not satisfy her burden to prove by a

27    preponderance of the evidence that her sickness or injury

28    prevented her from performing the material and substantial duties

of her regular occupation as it is defined in the national economy during the elimination period.

29. Accordingly, the Court concludes that the medical evidence in the AR weighs in favor of a finding that Defendant properly denied Plaintiff's disability benefits claim.

### IV.   ORDER

Based on the findings of fact and conclusions of law set forth above, the Court orders that judgment be entered against Plaintiff and in favor of Defendant. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

Dated: April 7, 2022

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

24